UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ROBERT K. CROCKER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SOCIAL SECURITY ADMINISTATION )<br>COMMISSIONER, )<br>)<br>Defendant ) | No. 1:09-cv-459-JAW |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration Commissioner found that Robert K. Crocker, a young man in his twenties, has severe psychological limitations consisting of anxiety disorder, affective disorder and polysubstance abuse disorder, that these disorders are not severe enough to satisfy a mental health listing, that Crocker can engage in substantial gainful activity at any level of exertion provided it is low-stress work with a specific vocational preparation rating of 2 or less, and that such jobs exists in significant numbers in the national economy, resulting in a denial of Crocker's application for disability benefits under Titles II and XVI of the Social Security Act. Crocker commenced this civil action for judicial review of the Commissioner's decision, alleging errors at Steps 2, 4, and 5 of the sequential evaluation process. I recommend that the Court affirm.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable

mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

The Commissioner's final decision is the April 24, 2009 decision of the Administrative Law Judge. The Administrative Law Judge found that Mr. Crocker has not engaged in substantial gainful activity since March 1, 2007, his alleged onset date, which satisfies Crocker's Step 1 burden.

At Step 2, the Administrative Law Judge found that Crocker suffers from polysubstance abuse disorder, anxiety disorder, and affective mood disorder. (Finding 3, R. 10.) Crocker alleges error in the Administrative Law Judge's failure to also recognize a bipolar II diagnosis a severe impairment. (Statement of Errors at 2-3.)

At Step 3, the Administrative Law Judge found that Crocker's presentation did not equate with a condition listed in the Commissioner's Listing of Impairments, a finding Crocker does not contest on appeal.

At Step 4, the Administrative Law Judge found that Crocker's only residual functional limitation relates to his ability to handle stressful work or work that would require some sustained job training (an SVP value of higher than 2). (Finding 5, R. 11.) Crocker argues that this finding is not sufficient because his impairments render him unable to meet the social expectations of any workplace or to maintain concentration and complete tasks. He also says the Administrative Law Judge performed a faulty credibility assessment and violated the regulations

2

insofar as he discounted some of Crocker's symptoms based on an alleged failure to comply with prescribed treatment. (Statement of Errors at 3-12.) Crocker's residual functional capacity objections all pertain to Step 5, as the Administrative Law Judge found that Crocker could not perform his past relevant work as a deli clerk, stocker, and telemarketer due to the stress demands of these positions. (Finding 6, R. 14.)

At Step 5, the Administrative Law Judge found that low-stress, easy to learn jobs existed that Crocker could perform, specifying mail clerk, document preparer, and machine operator. (Finding 10, R. 14-15.) Crocker's challenge to this finding is premised upon his Step 4 / residual functional capacity challenge. He does not otherwise take issue with the jobs identified by the vocational expert. (Statement of Errors at 12-13.)

**A.    Step 2**

The Administrative Law Judge's Step 2 finding is brief. In it, he simply states that polysubstance abuse disorder, anxiety disorder, and affective mood disorder are the only impairments that cause more than a mild restriction in ability to perform substantial gainful activity. (Finding 3, R. 10.)

On June 8, 2007, Dr. Diane Tennies, Ph. D., issued a psychological evaluation report on referral from the Acadia Hospital following patient evaluations on April 16, 2007, and May 8, 2007. (Ex. 10F, R. 420.) In her report, Dr. Tennies included a diagnosis of bipolar II disorder. (R. 424). Crocker's NP counselor at Acadia Hospital incorporated this diagnosis into treatment progress notes maintained by Acadia Hospital. (R. 498.) Crocker says it was error for the Administrative Law Judge to fail to include this diagnosis among Crocker's severe impairments without even discussing why it would be rejected. (Statement of Errors at 3.)

3

The claimant's burden at Step 2 is a *de minimis* burden, designed to do no more than screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination at Step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28).

For purposes of discussion, the Court may assume that omission of the bipolar II diagnosis was inconsistent with the *de minimis* nature of a claimant's burden at Step 2. However, a Step 2 error does not warrant remand unless the plaintiff can demonstrate that inclusion of the impairment would have changed the outcome. Absent such a showing, the error is considered harmless. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280, *4 n.3, 2009 U.S. Dist. Lexis 122049, *10 n.3 (D. Me. Dec. 29, 2009) (Report and Recommended Decision, Rich, Mag. J.) (collecting cases), affirmed without obj., 2010 U.S. Dist. Lexis 4005 (Jan. 19, 2010) (Woodcock, J.). Here, the Statement of Errors does not include a challenge to the Step 3 finding, so the question is whether the omission of bipolar disorder resulted in a residual functional capacity (RFC) finding that insufficiently accounts for some functional limitations not already accounted for in relation to the severe mood and anxiety impairments that the Administrative Law Judge did acknowledge. Crocker's Step 4 / RFC arguments do not develop this issue for which he bears the burden. I consider it foreclosed as a result, particularly as I can discern

nothing in the record that would call for a different result at Step 4 or Step 5 of the review process simply because a bipolar diagnosis entered the picture to explain Crocker's symptoms.[1]

**B.      RFC / Step 4 / Step 5**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity, as well as the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his residual functional capacity does not enable him to engage in his past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. §§ 404.1520(f), 416.920(f). Beyond proving that his or her RFC is incompatible with past relevant work, the claimant bears the burden of proving the limitations that factor into the Commissioner's residual functional capacity finding. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Clarification of Rules Involving Residual Functional Capacity Assessments*, 68 Fed. Reg. 51,153, 51,157 (Aug. 26, 2003). This is both a burden of production and a burden of persuasion and it remains with the claimant through Step 4, where the claimant must demonstrate an inability to perform his or her past relevant work, if any. 68 Fed. Reg. 51,153, 51,155. If past relevant work does not exist or cannot be performed, the process moves to Step 5 and the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform, in light of his residual functional capacity, age, education, and work experience. 20 C.F.R. §§

---

[1] In her PRT, Dr. Sawyer evaluated Crocker's impairments in relation to the Commissioner's Listing of Impairments. She noted the existence of the bipolar diagnosis, categorized Crocker's impairments as falling under the categories of affective disorders and anxiety-related disorders, and assessed moderate difficulties in maintaining social functioning and mild difficulties in maintaining concentration, persistence, and pace, without any episode of decompensation. (R. 435, 437.) A bipolar diagnosis has no talismanic significance of its own in the social security regulations. "Bipolar syndrome" is a component of Listing 12.04 (Affective Disorders), but to meet this listing the claimant must have a "history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes." Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P ("Listing") § 12.04(A)(3). Crocker also raises the issue of personality disorder. Dr. Tennies did not actually diagnose personality disorder, though she opined that Crocker was close to meeting the diagnostic criteria. Parenthetically, personality disorder has its own place in the listings. Listing § 12.08.

404.1520(g), 419.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Although the burden shifts, the Commissioner does not assume any burden to prove the non-existence of limitations. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); 68 Fed. Reg. 51,153, 51,155, 51,157.

As of his referral to Dr. Tennies, Crocker had a long-standing diagnosis of depressive / affective disorder and generalized anxiety disorder. In addition, Acadia Hospital had diagnosed mood disorder, not otherwise specified, and alcohol and marijuana abuse. In 2007 the Acadia Hospital referred Crocker to Dr. Tennies for psychological evaluation, diagnostic clarification, and treatment recommendations. (R. 420.) Dr. Tennies administered three psychological tests.

The *Substance Abuse Subtle Screening Inventory-III* indicates that individuals with Crocker's response profile have a "high probability for having a substance dependence disorder." (R. 422.) The *Millon Clinical Mutiaxial Inventory-Third Version*, indicates:

> On the clinical syndrome scales, Mr. Crocker produced significant elevations on the anxiety, dysthymic and major depression scales. These are worthy of description and analysis as they may arise in response to external precipitants and are likely to reflect and accentuate several of the more enduring and pervasive aspects of his basic personality makeup. A longstanding dysthymic characterize[s] the daily life of this moody individual. He sees little to brighten his chronic depressive tone and is likely filled with self-pity, feels empty and apprehensive, is sensitive to humiliation and anticipates the worst. He is also reporting suffering from symptoms of a generalized anxiety disorder.

(R. 422-23.) Third, and finally, the *Minnesota Multiphasic Personality Inventory-II* labels someone with Crocker's response profile as having "more likely than not [a] valid clinical profile that is an adequate indication of his present personality functioning, although there was a tendency towards exaggeration." (R. 423.) Individuals in this profile are characterized by "chronic psychological maladjustment" and are generally overwhelmed by anxiety, tension, and depression, and their worries and penchant to self-analyze interfere with concentration and

decision-making and tend to make them function at a low level of efficiency. Poor work and achievement is a "possible" history. (R. 423.)

Dr. Tennies offered her professional conclusions "based on a review of the historical, clinical, observational and psychometric data collected and analyzed" during her evaluation. (R. 423-24.) She found Crocker "diagnostically complex" with acute psychiatric disorders that were not well managed at the time that are complicated by "underlying personality features." (R. 424.) She advised that Crocker receive cognitive behavioral treatment for his underlying personality features, without which she opined that his profile would "culminate with him meeting full diagnostic criteria for a Personality Disorder with mixed features." (R. 424.) In her view, treatment would be complicated based on her assessment that Crocker "is unlikely to comply with any treatment plan involving abstinence." (R. 424.) Dr. Tennies indicated that her evaluation supported diagnoses of Cannabis dependence, bipolar II disorder, and generalized anxiety disorder with avoidant, depressive, and dependent personality features. (R. 424.)

Subsequently, in August 2007, Dr. Sawyer performed her psychiatric review technique (PRT) and offered a mental RFC assessment. Dr. Sawyer reviewed Crocker's medical records, including Dr. Tennies's psychological evaluation and diagnoses. (R. 437.) For social security purposes, according to Dr. Sawyer, Crocker's diagnoses and symptoms fall under the diagnostic categories of affective disorders and anxiety-related disorders. (R. 425.) Dr. Sawyer identified Crocker's affective disorder as a depressive disorder, not otherwise specified (R. 428), and his anxiety-related disorder as a mixed anxiety disorder with obsessive compulsive, social phobia and generalized features (R. 430). She concluded that these disorders were severe and required an assessment of Crocker's residual functional capacity.

With regard to residual functional capacity, Dr. Sawyer found Crocker's allegations of social anxiety, depression, and mood disorder to be credible, but assessed that his capacity to understand and remember is not significantly impaired, that he can attend to and persist with non-complex tasks over the course of a normal workday and workweek, that he has the capacity to interact with coworkers and supervisors but not the public, and that he requires a routine with few day-to-day changes. (R. 441.)

The Administrative Law Judge's assessment of Crocker's residual functional capacity is consistent with the assessment made by Dr. Sawyer. The Administrative Law Judge found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels, but he is limited to low stress, SVP 2 work. Low stress work is defined as no more than occasionally [sic] use of judgment; no more than occasional changes in the work setting; no more than occasional decision-making; no more than occasional interaction with supervisors; no more than occasional interaction with coworkers; and no public interaction.

(R. 11.) Dr. Sawyer's mental RFC assessment is substantial evidence in support of this finding. Nevertheless, because Crocker alleges a subjective experience of symptoms in excess of what can be supported by the objective medical evidence, the Administrative Law Judge performed a credibility analysis, as is required by the Commissioner's regulations. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 416.929, 416.945(a)(3). When considering whether the record contains substantial evidence in support of a credibility determination, the Court must keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility" of the Administrative Law Judge. Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

Crocker maintains that his social anxiety and his alleged concentration deficits are too severe to enable any substantial gainful activity. The Administrative Law Judge acknowledged

that the medically determinable impairments could cause that level of impairment, but found that the record as a whole made Crocker's allegations credible only to the extent of the RFC finding. (R. 12.) In discussing the record the Administrative Law Judge considered new treatment reports subsequent to the 2007 evaluations by Dr. Tennies and Dr. Sawyer, including some evidence that Crocker was drinking heavily, still abusing marijuana, and had discontinued taking his prescribed medication for several months in 2008. (R. 13, 667-68.) The Administrative Law Judge did not find Crocker's report of no benefit from medication to be credible and chose, instead, to rely on Dr. Tennies's assessment that Crocker's condition is highly susceptible to treatment. (R. 13.) As for functional capacity, Crocker reported heightened anxiety symptoms upon attending courses at the University of Maine, but the Administrative Law Judge reasoned that Crocker's 3.7 grade point average suggested less than disabling anxiety or concentration deficits. (R. 13.) As for allegations of overwhelming social anxiety, the Administrative Law Judge also observed that Crocker was able to organize a birthday party to which he invited 50 friends and that Crocker was able to attend both the Fryeburg Fair and the Bangor Folk Festival, which would seemingly be precluded by disabling social anxiety. (R. 13.) Although Crocker offers explanations for why or how his participation in this events remains consistent with his report of disabling anxiety, and how his academic experience was too much of a challenge for him, his participation in the academic program and in these three social events is nonetheless substantial evidence in support of the Administrative Law Judge's credibility finding because a reasonable mind might well regard Crocker's willingness to engage in these activities as a reliable indicator that he is not precluded from engaging in work involving no public exposure and only limited social expectations.

Evidently to shore up his credibility assessment, the Administrative Law Judge faulted Crocker for persisting in his belief that marijuana is good medicine for his anxiety and mood, citing Social Security Ruling 82-59 in the course of his discussion. Crocker argues that the Administrative Law Judge's reference to his failure to abstain from marijuana and the Administrative Law Judge's citation to SSR 82-59 triggers a mandatory remand so that Crocker can have an opportunity to follow prescribed treatment. This argument is not a winning argument.

Crocker's alleged work-related impairments fall under the affective disorder and anxiety disorder categories whether he is abusing marijuana or not.[2] Dr. Sawyer performed her PRT knowing of Crocker's marijuana addiction diagnosis. (R. 437.) She produced her RFC assessment the same day as her PRT, well aware that this disorder was present in the medical records. She did not find a disabling level of mood or anxiety impairment. Consistently, the Administrative Law Judge did not find that Crocker's persistent marijuana usage rendered him disabled. Such a finding would be required before "development" of the failure to follow prescribed treatment issue would be called for under SSR 82-59. In other words, this case is not truly a case of "denial for failure to follow prescribed treatment." Instead, it is a case of denial for failure to prove the existence of a disabling combination of impairments. The Administrative Law Judge's core point is not that marijuana abuse renders Crocker disabled. The finding the Administrative Law Judge made is that without such abuse he would experience less social anxiety than what the Administrative Law Judge credited him with having. (R. 14: "While the claimant does exhibit some limitation in his social functioning with the presence of

---

[2] It bears mentioning that Crocker's Representative's Brief filed in December 2008 asserts that his condition neither worsens with marijuana usage nor improves without it. (Ex. 10E, R. 189.)

10

polysubstance abuse, . . . without the presence of illicit substances the claimant would encounter only mild difficulties in functioning and would be no more limited than hereinbefore stated.")  In sum, the Administrative Law Judge's reference to SSR 82-59 was unnecessary to support his credibility evaluations and amounted merely to an argument by analogy.[3]

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 16, 2010

---

[3] Even assuming, for the sake of argument, that SSR 82-59 applies here, the Ruling does not mandate that the adjudicator engage in a protracted development of the issue in all cases.  Development of the issue is designed to permit the claimant or beneficiary to provide a justification for not conforming to a treatment plan.  The record already establishes that Crocker considers marijuana to be beneficial when it comes to some of his symptoms.  (R. 315.)  As it happens, this justification is not one of the eight justifications that ordinarily prevails under the Ruling.  A reasonable person might well accept the existing record evidence as conclusive of the issue.